You may proceed. Your Honors, and may it please the Honorable Court, I represent appellant Vericool World seeking reversal and remand. I respectfully request three minutes for rebuttal, if I may. Sure. The paradigmatic case of false advertising under the Lanham Act is a false comparative advertising case, where one competitor puts two products side by side and then lies about their competitor. And it's such a heartland of a Lanham Act false advertising claim, the federal courts have fashioned doctrines specifically to deter it, presumptions, et cetera. And that's because false comparison to another's product as opposed to merely lying about your own product is deemed to have special harm to consumers, harm to competitors, harm to the functioning of markets when consumers can no longer rely upon representations. So, counsel, as far as the representations go, it does seem like there's a difference. I mean, this gets into the weeds. There are some representations that are cognizable, some misrepresentations that are cognizable, some are not. And the case law seems to go to whether there are attributes of the product itself as opposed to attributes of the idea behind the product. Would you agree with that, that that's the delineation that Dastar announced? Roughly. I mean, I think that's roughly right. I would phrase it a little bit differently because the way I see this is the district court, I mean, he felt really bound by Dastar and CyberSouth. So there's that, and then there's the statutory argument. So I see those as different, and then there's all the alternative bases that he didn't address and even incline. I mean, clearly he's bound by those cases. The question is, do they control? And I think you have a decent argument that they're not just positive, but what principles are we supposed to glean from those cases that would apply here? Well, I think, I mean, I guess I would say to follow their analytical framework. Well, that's what I'm asking. Yeah. I mean, because you sort of started out alluding to this idea that, well, misrepresentations are cognizable under the Lanham Act. Well, yes, but not all misrepresentations about a product. I mean, they do have to be about a character or attribute of the product, right? Yes. So I guess I see it as the statutory question, and so I think you're asking about the statutory question. So I'd want to focus on the text of the statute. And the text says we're at 15 U.S.C. 1125A1B, and it says, in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her, and that would be Igloos products, or another person's goods, services, or commercial activities, and shall be liable in a civil action. And so I think what's important here is, so even if you think, so even if you, it's technically false. It is false that it's the first biodegradable, world's first 100% biodegradable cooler. But even if you think that's not an inherent, I mean, I disagree with the district court about the nature and characteristics, and that goes to a few of the words in the statute. So geographic origin, where it came from originally, isn't necessarily inherent in the physical product of the property. Also, if you look at services or commercial activities, and the district court itself uses physical property or functional property. Well, can you tell us then, being the first biodegradable, how does that affect the nature, characteristics, or quality of the cooler? Right. So one thing I would say is that gets to the issue of falsity, and I don't take the district court to have actually ruled on the issue of falsity, the puffery falsity argument. We'll assume it's a falsity. Yeah. So how does that affect the quality of the origins? No, I thought it's nature. You're not relying on origin, I thought. Sorry, that's right. How does it affect? Well, so first the nature, characteristics, or quality. The emphasis would be another person. By saying you're the first in a press release, you're saying at least for some amount of time you're the only. And that necessarily means that every other cooler, whether first, second, third, fourth, what have you, does not have that quality. So the necessary implication there is the problem. I understand your argument as a textual matter. The problem is it seems to sort of take it out of context. It sort of puts every member's representation. Marketers are very good at puffery or worse, and that doesn't mean that those marketing claims are always Lanham Act claims. And I'm worried that your argument would lead us to that conclusion. Well, I really want to distinguish. I mean, in your view, what would be an uncognizable claim? Anything that you say about the product. Well, no, it would have to. So I want to distinguish three things, because the district court expressly said this. So in oral argument below, the district court said, quote, if I disagree with you on DASDAR-Cybersound, I wouldn't go your way on puffery, let me put it that way. So there's three separate issues. I wouldn't go your way on puffery. I wouldn't go your way on puffery to IGLOO. There's three separate issues. So falsity wasn't ruled on. So that's a separate issue. And so whether or not it's true or false. I understand. I'm just trying to get to the heart of it. How do we distinguish? I want to know what your line is on what would be, under your theory, what would be a noncognizable claim? Because it seems like your theory is anything that a marketer says about the product or about how the product was developed or about how we're marketing the product, if it's false, we've got a Lanham Act claim. And I'm not sure I see a limiting principle there. Well, the limiting principle would be all the other doctrines that are going on. So they're arguing over materiality, entry, all of these other things. But I think, I mean, to me this is a material claim. I mean, I think you have a misrepresentation claim. But not everyone would. Right? So you'd have to look at do they care. So they come in and say no one cares. And that's kind of what they did. I think there's whole kinds of problems with their made for litigation expert report. But that's what they're trying to do is say no one cares about biodegradable coolers. No one cares. Now, the product, you check their website, it's sold out. They don't care who was first. Right? Well. That's the point. Right. The whole program is that people care that it's biodegradable. Right? Right. So that's the claim. And that gets to materiality. The falsehood here is so if you think about a consumer, if you step back and think about fundamental principles and purposes. Let me ask you the problem that troubles me. Not about a product, but about a service. A couple of weeks ago I ate dinner at an Italian restaurant in Philadelphia. It says it's the oldest in continuous operation in the United States. Its rival for that is here in San Francisco. And the debate between the two has gone on for decades, and it has to do with exactly with the continuity of service here in San Francisco after the 1906 earthquake. That's what controls who has the longest running continuous Italian restaurant. Do you think we could litigate that under the Lanham Act? No. Why not? Well, I'll tell you why. Because, so one of the issues is, and the false advertising cases talk a lot about context, and we're talking about context for the consumers. So one limiting principle here, this is a press release saying I'm the world's first. So if I'm running it, if I go, it's an advertiser, a press release saying world's first. In that case, we're having a debate about history. So if I open a history book and say world's first democracy. That's what I'm asking you about the restaurant comparison. To get away from, you don't want to talk about products. You want to talk about services too, right? Right. So tell me about why we would not be able to litigate a claim between those two restaurants if we agree with you. Right. So it's not a, I don't see it as a product service distinction there. What I would see that as is the question is if you just release, let's say there was no restaurant in the world that served that kind of food. Or people didn't know it. They had no idea. They weren't aware of it. And they released a press release that said I'm the first restaurant that does this. Right. Press release. But in your case, you're talking about a significant period of history. So if Pepsi said they're the first carbonated beverage in history, that would be false. Coca-Cola preceded them. And Schweppes preceded them. But that's historical. So if you think about something, if you open a history book. So if it's old enough? Go ahead. Well, I guess I was just trying to distinguish. You seem to be saying it's because they didn't, there was no, that almost goes to materiality, right? Or it doesn't influence the consumer. If you're selling it right now, you're like, hey, we had the new technology. That's what you're basically arguing. We had the new technology first. So the first principle is it would affect the consumer purchasing decision. And the principle here is. And you're saying the historical aspect doesn't affect. Nobody cares whether in 1906 the restaurant was opened or not. Right. But they would care, in your view, if you came up with a new food that, you know, you couldn't get elsewhere. Or that you had actually created. I guess that's your argument, right? Yes. So I'll give you an alternative where there wouldn't be liability. Let's say they do a press list. We were the first. And then they start listing their competitors, right? Then the consumer knows, okay, there's others. But if you say falsely, we're the first. The consumer, relying on that, doesn't search anywhere else. And then here. And not only that. Anyone else that claimed that they were doing it, the consumer would believe that they're not doing it. Right. Because suppose you get in the office and someone tells you I'm the first person in the office. And you believe that person. And someone else says, no, I was here. Well, there's a conflict there. And you have to pick someone to believe. And you're likely to believe. So tie this back to your case. Okay. So then if someone's saying that they're the first biodegradable cooler, then the implication is that there's no other. Anything that came before was not biodegradable, right? Yes. Exactly. Now tell me how that affects the nature, quality, or characteristic of the product. Because you're saying that those other coolers are not biodegradable. They won't degrade.  Are you saying that? I mean, you're just saying we were the first. You're not. I don't know that you're saying. I'm not sure that you can infer that. For at least some amount of time. So if I say I'm the first in the office, that means whoever's second, there's a time period between them. And so necessarily, there is a period of time where I am implying there is no other product in the world. And that anything that came before me doesn't have that quality. So that's. Okay. This is helpful. I wanted to ask about the Federal Circuit case, the Baden case, because I actually thought that there was a stronger claim there. They said we have basically the first dual cushion tech, which seemed to be something that was kind of material to the product or the attributes of the product. But the Federal Circuit said that's not cognizable. Would we be creating a circuit split or at least some tension with the Federal Circuit if we ruled in your favor? I'm into my rebuttal. Can I answer? You can always answer my question. Okay. Well, so first point is Federal Circuit, it follows you. You don't want to follow them because they are applying your law. So it's kind of like when a state court claim comes to you, you apply the California Supreme Court's law. So no, in a short answer, you would just be. So what law was that? I guess I didn't look at that. What law were they applying in Baden? They're applying Ninth Circuit false advertising laws. So it's a persuasive authority essentially. I think it's not apposite because essentially where I disagree with Baden is I don't think saying the first. If I ask you who the first president is, it's not John Adams, it's not Thomas Jefferson. But if I ask you who the most innovative president is, right, so that's a very subjective quality. First is not. If I ask you who won the race in a track meet, you know who it is. Who put in the best effort? Who was the most innovative? Who was the most elegant? First is an objective measurable quality. So that would be my answer. And then I think Baden itself acknowledges physical and functional attributes. And you can measure this. You can see. I mean essentially these products are heavy paper that you can use to cool. And you can go see. Non-biodegradable, it will be there with the pyramids. Biodegradable, it will be gone within a couple of years because it's essentially paper. So that's essentially I think the big where I distinguish Baden is I think a lot of this is going on mere innovative claims versus first. First is measurable and at least for some amount of time. So did that answer your question? Yeah. Do you want to reserve? Yeah, can I reserve? Yep. May it please the court. Tim Byron of Byron Raphael for defendant Igloo Products Corp. There's a lot of problems with the argument that first means only that we're hearing today. And I think one is that it's not true. First doesn't mean only. First, being the first to cross the finish line is not the same as being the only person in a race. Well, it means that anyone that crossed beforehand was not the first. I suppose. But I think the real big problem. How can you suppose that? It has to be true. Well, it means whenever that. The real problem with this argument is that it wasn't made at the district court. And it's a different theory than the theory that was made at the district court. I don't know if that matters because you're allowed to bring issues to our court and the precise argument is not necessary. Oh, you can certainly bring new issues to this court. But I think the issue is we are on. This is an appeal of a case that went all the way through summary judgment below. And I think there are three key documents that kind of show what arguments were made and what evidence came out at the district court level. If you look at their complaint, they do not ever talk about the idea that this first statement made people think that they were not biodegradable. Isn't it obvious? I mean, it's just an obvious inference. I mean, it actually conflicts with the evidence. The evidence that they cite, they say that it made people view them as a second mover. Right. Many articles portrayed the Ohana Cooler as secondary to the Igloos Biocooler. It wasn't the first of its kind. It lost the visibility and cachet associated with being the first to produce a biodegradable cooler. So it's not that anyone thought their cooler wasn't biodegradable. It was they didn't get the bragging rights of being able to say they were the first. And so that was in the plaintiff. But they were, their cooler was on the market first, right? We disagree about that. It was never sold in stores. We were the first to actually sell it. I think you have a strong argument that it's not literally false. But that's not before us, right? You would agree with that? Well, I mean, it's in the briefs, I think. You know, you could affirm on that basis that it's not literally false based on the evidence that's in the record. But the district court didn't reach it. The district court didn't reach that. In our brief, we say that's an alternative ground that affirmance can happen. But that was in the complaint. Eighteen months later. Would this be different if they were selling first? So if they were selling and they'd been on the market for a year and then you come out and say, hey, we are the first biodegradable, doesn't that imply that theirs is not biodegradable? In that scenario, you're saying that didn't happen here. But if they were selling it for a year, that would imply that theirs was not biodegradable. Well, I think under Daystar and under Cybersound, these are the kind of claims, these quote unquote false inventorship claims, are the kinds that Justice Scalia and Daystar said just aren't actionable under the Lanham Act. Hold on. I think, though, we're fine tuning this. And it may be that they have more fine tuned their argument, but I'm trying to understand conceptually. I'm totally. Well, I think I'm with you that just saying I was first might not be cognizable. We invented this. They didn't invent it. That seems to be at least under the federal circuit case, probably under Daystar, that might not be cognizable. But here now they were sort of bringing this into. Wait a second. We're saying you actually made a representation about our product that it was biodegradable. I mean, whether their product was biodegradable or not, that is an attribute of the product, right? You would agree with that. It's not before the court. Let's assume that it is. Okay. I think it still wouldn't be. It's not a statement that is cognizable under the Lanham Act.  Is it not? You're saying whether or not something is biodegradable is not in nature a characteristic or quality of the product? No, I think, look, if we said we're the only, this is the only biodegradable cooler, I would concede that that's. No, but you're saying you were the first. So that meant that anything that came before it was not biodegradable. There's a small universe of people who were aware of VeraCool World. It doesn't matter. I'm just saying, wouldn't that create a statement about the biodegradableness of the cooler? If you're saying you're the first, anything that came before it was not biodegradable? Yes or no? I'm going to stick with my no answer. How? Well, because you'd have to assume that the consumer knows that there's another cooler out there. Okay, assume that. You can't fight me on this. You have to concede this. Your best argument is on the waiver point, but you have to concede that it is, it's a statement about the nature, quality, or characteristic of a cooler. If you're saying I'm the first biodegradable, anything that came before me is not biodegradable. So then you're dealing with comparative advertising, which this isn't a comparative advertising case. You're saying the other guys are not like us. But when you're saying you're the first, that's the implied statement is that the other guys are not like us. I'm just saying, Your Honor, there's a whole body of comparative law, comparative advertising law that we're not even in and hasn't been cited by either party. Well, I don't think it is comparative because you're just saying what's the nature, characteristic, or quality of the product. Well, I agree with you there. I agree with you. It is not comparative advertising. Let's just, okay, I've got to dig into this more because I'm not sure I understand. Now, this is sort of taking a little bit of a different turn than I thought about this case. So, I mean, the other argument I think you have is that the facts don't support this because Vericool had this, but they hadn't been marketing it. So, therefore, there was never an opportunity for confusion because no one would have ever thought this. Okay, but let's set all that aside. Let's just assume I'm selling a biodegradable cooler in 2016. Then Igloo comes into the market in 2017 and says we are selling the first biodegradable cooler on the market a year later. Wouldn't that imply something about their product that it was not biodegradable that would be a characteristic? Now, you may be right that they didn't raise this claim. You may be right that that isn't the facts of this case, but that would be a characteristic. If you said we are the first biodegradable cooler, doesn't that imply that something that was being sold before that was not biodegradable? Well, so I think it would be helpful to actually just quote the actual language of the Igloo press release. It said the world's first eco-friendly cooler. Also, the world's first cooler, comma, made from biodegradable materials. They also said the world's first eco-sensitive cooler, comma, made from 100% biodegradable materials. Now, that's a pretty vague statement. It doesn't say the world's first. It's the world's first that's made from biodegradable materials. That's right. Doesn't that imply that anything else out on the market at that point is not made from biodegradable materials? I suppose it could, but it really depends on what you mean by market and how you read that sentence. But that all goes to the literal falsity argument, not to the question of whether or not this is a cognizable Lanham Act claim. Well, I disagree a little bit, Your Honor, because Daystar is not just about the sort of tension between the Lanham Act and the Copyright Act and the Patent Act. It's also about common sense. I mean just as Scalia says, the average consumer doesn't care who came up with – So wouldn't a consumer care whether or not something is biodegradable here? Absolutely. Okay, so this is about being biodegradable, so people would care. And it's commonsensical to believe that. My one problem with the Daystar argument, that's all an interpretation of origin, of the good, correct? That's correct. It has nothing to do with whether nature characterizes quality. So I don't know why we think that that's governing this case. Oh, well, because Cybersound, the Ninth Circuit Cybersound case, basically says we have – there's 1125A1A, which is the language that Daystar interprets. Right. And Daystar is all about A1. There's all these references to A1. And then so Cybersound, four years later, says if the language in A1A is to be read with this limitation, the origin is to be read in this limitation, it makes perfect sense to read A1B with a similar limitation. And so – and this is the way – this is the way the Ninth Circuit handled it. It's the way the Federal Circuit handled it. I don't think that that case, that Ninth Circuit case, Shadowstar – Cybersound was that clear in what it was doing, frankly. Well, I think it's pretty clear to me that they say – so there's false designation of origin, which is 1125A1A. Justice Scalia says origin in A1A doesn't mean the origin of the idea. It doesn't mean the origin of the story. Okay. Well, so as Cybersound says, the nature characteristic and quality of the product on the landing map are more properly construed to mean characteristics of the good itself, right? Correct. So why isn't whether or not a good is biodegradable not about the characteristic of the good itself? That's a different question. The question here is who is the first to have a – Well, I mean, we went through the whole inference that if you're saying you're the first, then that means anyone beforehand was not biodegradable. Okay. Let me ask you this. Do you agree that whether or not something is biodegradable, it goes to the characteristics of the good itself?  Okay. But I think what Justice Scalia said in Daystar is whether a good is biodegradable, absolutely it goes to A1A. But saying that you're the first isn't. That's the idea. That's the idea. I'm with you on that. That's how I came in thinking about this case. But I don't think I considered this nuance fully that there was an implication that you were – I mean, if you flat out said – if you came out and said our product is biodegradable, their product is not biodegradable. Let's say you said that. It would be a different case. Completely different case. But that's not the case that we have, Your Honor. And I understand that you can take new questions. You can consider new issues. But this went all the way through discovery. And it's in our brief. There are interrogatory responses where we ask, what's your injury? There is 30B6 witness testimony where we ask where their injury is. Well, at the very least, should they have an opportunity to amend their complaint then? Excuse me? Should they have an opportunity to amend their complaint? Absolutely not. We went through two years of litigation where, you know, the same arguments they made in their – the same statements they made in their complaint in 2023, they made again in their motion for summary judgment in October 20 – you know, a year and a half later. And so their position did not change through the entire – the entirety of this case. And they ran right into the buzzsaw of Daystar. And, you know, all of the language in their complaint, it's about losing the sort of visibility and cachet of being number one. It's not that anyone thought they weren't – their product wasn't biodegradable. And there's testimony from their CEO where the CEO is asked straight up, you know, did anyone think your product wasn't biodegradable? No, they just didn't think we were first. Brian? Excuse me, but let's assume literal falsity for the moment, a false claim of going first. What's the value in the marketplace of allowing such false claims to go unremitied if there is any? I think the value of allowing a statement like this to go unremitied is because this isn't the sort of statement that consumers care about. It's the – Well, why do you make it? Because it is a new product. And in marketing material, you have to explain what a product is. Why haven't they seen it before? And so this is a press release. Well, this does sound material. And I think we may have to assume for these purposes that there may be some cachet. I thought your argument had to be in essence that weeding out, litigating such claims carries with it its own costs, disruptions, confusions, interference with patent and copyright law. That's all true, Your Honor. And that's what I was trying to get at. But that's sort of a backhanded way of justifying false claims in the market. Well, I think this is why we have an entire doctrine of puffery, because there are tons of statements, new and improved. Forget about puffery. Let's assume literal falsity here. That's the claim that's being made. And the question is what is the value of allowing that? What value do such false claims have for consumers? Or do we just have to tolerate them because weeding them out and litigating them would cause other collateral damage? I think there's no value to the consumer to remedy these sort of, to address these issues, because I don't think they're the kind of statements that consumers care about. And so any time we don't spend on this case is money that both sides save and the court saves. I guess I'll ask this one more time, but I'm struggling with the notion that consumers don't care about these claims if they are being made in order to promote sales. It looks like I'm out of time, but may I answer your question? Please. It's not to distinguish Igloo's product from something that's already on the market. It's to educate the public about the fact that there's a new product that they can buy for the first time at their Lucky or Safeway grocery store that wasn't on the shelves before. And so this is a helpful statement that Igloo was the first to sell these products in REI, in grocery stores. And so this is announcing. Well, that's a claim that it's literally true. But we have to assume falsity here, right? Well, we don't. For purposes of this appeal, we do, right? Well, I don't think we do. I don't think there's – Because it's on summary judgment. Yeah. I don't think there's – there's no reason to assume literal falsity here. That's something that they would have to affirmatively prove. Well, the district court ruled even if despite – if assuming it's false, then it's still not cognizable. That may be the case. Okay. All right, thank you.  We'll give you time for rebuttal. So can you address this issue? I mean, this does seem to be a reframing of the argument, at least as I understood it. And I'm interested in your response as to – I don't know if it's really waiver as much as you didn't really raise this claim. I mean, I did read the allegations as, hey, we care about who was first to the market, not, hey, you were actually lying about our product quality. So can you address where you said that below and made this argument? Well, I think we raised the issue below of whether or not it's cognizable. Do you have evidence in the – just one summary judgment. Do you have evidence in the record where you said here's evidence that they were lying about our product being – they were saying we were not a biodegradable product? Well, so I guess what I would say on that, I think you're saying do we have evidence of a consumer saying I don't think it's biodegradable? Yeah. I mean, or evidence from one of your – I mean, he cites your CEO who says, hey, we wanted to be first to the market. That's a different issue from, hey, they lied about our – quality of our product. Where is evidence in the record that you presented to the district court that said consumers think that we're not biodegradable as opposed to they just don't think we got there first? So I want to – yeah, I think there's two facts to clear up where I disagree with Igloo's counsel. So first is that one. People are saying it's a knockoff. A knockoff may not have the same quality. So I don't – when they're interviewing the CEO – I don't find that a compelling argument. The argument from you that I find potentially compelling is they were lying about our product. I want to know where that is in the record below. Well, I think that's a separate legal question, a presumption. No, where in the record below did you present any evidence? This is on summary judgment. Where was there any evidence that that's what a consumer thought or that you raised that argument that that's what a consumer thought? And I think that shows up – I'll have to get the – pull the cites for you, but I think it's in the deposition transcripts where they're talking – and the declarations where they're talking about people are coming to us and saying we're lying about the product. And so I'll have to pull those for you. Can you be more specific about which depositions? I think it's the deposition of Gerald Jobe. And then there was, I think, a declaration where they're talking about people coming and saying we don't trust you, we don't believe you. So it's – they were calling it hearsay, but it wasn't introduced for the – I don't even – I'll take hearsay. But I just want to know whether those are talking about we don't believe you that you were first to the market or we don't believe you that you're actually selling a biodegradable product. Well, they're calling it a knockoff, which is a false – That's a different question. I'll have to cite those to you. I don't think your knockoff claim works. I think the question is what can we look to to say that they were lying and accusing you of not being a biodegradable product. And I'll have to pull those for you, Your Honor. I want to address – they keep saying – they're saying retail, but I think one of the points is at 2ER-281, they talk about the first purchase. Vericle was selling it. And then at 2ER-133, line 16. Well, that goes to the literal falsity again. But we're still – we're not – I think we're focusing on this, whether or not it's actual, actionable. Can you – why is your argument here today not waived? That's what your friend on the other side is saying. It was all waived. This is the first time you're making this argument. Well, again, I would just – I think there's three responses. So first is argument versus issue. I think we're making different arguments on characteristics and that. But I don't think – I think we've reframed it. I don't think we're changing the issue. The issue is a cognizable mistake. I think we do have some case law saying you're allowed to change the argument but not the issue. Is that – That's right. Second is I see this as a pure issue of law on this, which is you always have discretion to reach it. In the brief, we give you a lot of reasons. And I think the best reason to reach it is the district courts are split on it. So it gives them clarity. I don't agree that the facts are as weak because of – I do think Vericle is advertising at trade shows, just from the record, and I do think the record demonstrates there's only – What's the third reason? Well, the district courts split. So it's argument, issue, the pure question of law, and then the district courts are split. So, like, if the Supreme Court takes circuit splits, I think you guys should answer district court splits. If the district courts are divided on it. Can we ask for – well, we'll consider this, but you were going to get us some – I guess you're not going to have that here. Can you give us a 28-J letter or a supplemental memo? And I guess we'd ask for – perhaps from both parties, maybe we ought to issue an order that just asks for this evidence. Because I don't read it in your arguments. But if there is something where you actually said this, I'm actually interested to hear it. I'll just note, I believe that how advertisements are understood in ways that may be deceptive is treated by every circuit I know of as a question of fact. And if your theory is that Igloo's advertising was or is being understood by consumers in a way that is misleading, that's a question of fact subject to factual proof as opposed to lawyers' logic about how consumers might think about this. So that's why Judge Nelson's questions are so critical, and I'll be looking forward to that response. Yes, Your Honor. I think – can I address two – can I address your question that you asked my opposing counsel? Because the district court actually addressed it, which is you asked about the value of these kinds of advertisements. And at 1 ER 24, lines 5 and 8, the other side says the typical consumer typically doesn't care. Lines 10 through 15, the district court says, I don't know if that's where I would go if I were you. You obviously put it out there for a reason. You have a marketing department. You have lots of people spend time fantasizing out what to put on the product. So I don't know if I would need to get into – so the district court was disagreeing. And I think what the function here, what really is troubling about this kind of lie is it would short-circuit a search. If you truly think this is the first and only for a particular point in time – First and only are two very different things. That's right. Okay. All right. Thank you.  Newell says – the Newell decision of the Ninth Circuit, 513F3rd at 1053 says you consider their truth – you consider them at the time when made, and this was false when made about the competitor product. And then finally, do you want me to address your DASTAR question, DASTAR? I think we've let you go over, so I think we can look at that. But we'll take this under advisement. And for now, we thank both counsel for your arguments, and the case is now submitted. Thank you, Your Honor.
judges: Hamilton, NELSON, BUMATAY